IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DYNAENERGETICS EUROPE GMBH, | § | |
| and DYNAENERGETICS US, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-17-3784 |
| | § | |
| HUNTING TITAN, INC., and | § | |
| HUNTING ENERGY SERVICES, INC., | § | |
| | § | |
| Defendants/Counterclaim | § | |
| Plaintiffs | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

A number of motions are pending before the court, including: Plaintiff's Motion for Reconsideration of Order Consolidating Civil Action No. H-20-2123 and Civil Action No. H-17-3784 ("Plaintiffs' Motion for Reconsideration") (Docket Entry No. 56); Plaintiffs' Motion for Preliminary Injunction and Incorporated Memorandum in Support ("Plaintiffs' Motion for Preliminary Injunction") (Docket Entry No. 67), and Defendant's Emergency Motion for Contempt and to Enforce Stay ("Motion to Enforce Stay") (Docket Entry No. 81). For the reasons explained below, Plaintiffs' Motion for Reconsideration will be granted, Plaintiffs' Motion for Preliminary Injunction will be denied, and Defendants' Emergency Motion for Contempt and to Enforce Stay will be denied.

1

## I. <u>Factual and Procedural Background</u>

Plaintiffs, DynaEnergetics Europe GmbH, and DynaEnergetics US, Inc. (collectively, "Plaintiffs" or "DynaEnergetics"), and Defendants, Hunting Titan, Inc., and Hunting Energy Services, Inc. (collectively, "Defendants" or "Hunting"), compete in the manufacture and sale of perforating systems used in the oil and gas industry. Plaintiffs allege that Defendants' H-1™ Perforating System infringes patents related to their DynaStage System.

On December 14, 2017, Plaintiffs filed this action ("the 2017 Case") against Defendants alleging that "the H-1™ Perforating Gun System infringes one or more claims of [U.S. Patent No. 9,581,422 ("'422 Patent")] including at least Claims 1 and 5."[1]  Shortly thereafter Defendants filed a petition with the Patent Trials and Appeals Board ("PTAB") seeking <u>Inter Partes</u> Review ("IPR") of the '422 Patent.[2]  On August 27, 2018, the court stayed this action "pending the final outcome of IPR 2018-00600 regarding validity of [the '422 Patent] before the United States Patent and Trademark Office ('USPTO')."[3]

---

[1]Complaint and Demand for Jury Trial, Docket Entry No. 1, p. 4 ¶ 14.  <u>See also</u> U.S. Patent No. 9,581,422, Exhibit A, Docket Entry No. 1-1, and Claim Chart, Exhibit B, Docket Entry No. 1-2.  Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

[2]<u>See</u> Petition for <u>Inter Partes</u> Review of U.S. Patent No. 9,581,422, Exhibit A to Defendants' Motion to Stay Pending <u>Inter Partes</u> Review, Docket Entry No. 15-1.

[3]Order of Stay Pending <u>Inter Partes</u> Review, Docket Entry No. 33.

On May 2, 2019, Plaintiffs filed a second action, Civil Action No. 4:19-cv-1611 ("the 2019 Case"), claiming that Defendants' "H-2 Perforating System™ infringes one or more claims of the '422 Patent, including at least Claims 1 and 5."[4]  On June 14, 2019, Defendants filed Defendants' Unopposed Motion to Transfer, Consolidate, and Stay Pending <u>Inter Partes</u> Review.[5]  On July 2, 2019, this court granted Defendants' motion, ordered the 2019 Case consolidated with the 2017 Case, and stated that "the status of this case remains **STAYED** pending the final outcome of IPR 2018-00600 regarding the validity of [the '422 Patent] before the United States Patent and Trademark Office."[6]

On August 20, 2019, the PTAB entered a Final Written Decision in IPR 2018-00600 holding all the original and amended claims of the '422 Patent unpatentable.[7]  Plaintiffs challenged the PTAB's final written decision by requesting rehearing and review of their motion to amend claims of the '422 Patent by the Precedential Opinion Panel ("POP"), and on July 6, 2020, the POP issued a Decision granting Plaintiffs' request for rehearing and motion to amend claims of the '422 Patent, and upholding the patentability of

---

[4]Complaint and Demand for Jury Trial, Docket Entry No. 1 in Civil Action No. 4:16-1611, p. 4 ¶ 13.

[5]Docket Entry No. 34.

[6]Order, Docket Entry No. 37, p. 2.

[7]Exhibit A to Defendant's Opposition to Plaintiff's Opposed Motion to Lift Stay, Docket Entry No. 50-1.

the amended claims.[8] Defendants have appealed the POP's decision to the Federal Circuit, and Plaintiffs have cross-appealed the PTAB's decision holding all of the '422 Patent's original and amended claims unpatentable.[9]

In late 2019 two additional patents related to the DynaStage System were issued: U.S. Patent Nos. 10,429,161 ("the '161 Patent"), and U.S. Patent 10,472,938 ("the '938 Patent"). On January 30, 2020, Plaintiffs filed a third action in the Waco Division of the Western District of Texas, Civil Action No. 6:20-cv-00069 ("the 2020 Case"), alleging that Defendants' H-1™ Perforating Gun System infringes one or more claims of the '161 and '938 Patents.[10] On March 23, 2020, Plaintiffs filed a First Amended Complaint (Docket Entry No. 20), and on April 28, 2020, Plaintiffs filed a Second Amended Complaint (Docket Entry No. 32) in the 2020 Case. On June 16, 2020, the 2020 Case was transferred to this

---

[8]See Decision, Hunting Titan, Inc. v. DynaEnergetics Europe GmbH, IPR2018-00600, Paper 67 (PTAB July 6, 2020), Exhibit A to Plaintiffs' Opposed Motion to Lift Stay, Docket Entry No. 45-1. See also Exhibit 64 to Plaintiffs' Motion for Preliminary Injunction, Docket Entry No. 72-29 (same).

[9]See Plaintiffs' Motion for Preliminary Injunction, Docket Entry No. 67, p. 7 n. 2 ("The decision is on appeal to the Federal Circuit. DynaEnergetics won a confirmation of the patentability of certain amended claims by the [POP], and Hunting has appealed that loss. DynaEnergetics has cross-appealed a decision with respect to the original claims that were found unpatentable by the [PTAB].").

[10]Complaint and Demand for Jury Trial, Docket Entry No. 1, p. 4 ¶¶ 15-16 filed in both Civil Action No. 6:20-cv-00069 in the Western District of Texas, and Civil Action 4:20-cv-2123 in the Southern District of Texas.

court, given Civil Action No. 4:20-cv-2123, and assigned to Judge Hanks based on a finding by Judge Albright that "the Waco Case substantially overlaps with the Houston Case."[11]  On September 4, 2020, the court consolidated the 2020 Case with the 2017 Case, and denied Plaintiffs' motion to lift the stay.[12]

On September 22, 2020, Plaintiffs filed the pending Motion for Reconsideration asking the court to "reconsider its [September 4, 2020,] Order and deny Defendants' motion to consolidate the 2020 Case with the 2017 Case," and, alternatively, to "clarify its Order to provide that the 2020 Case is not stayed as a result of the consolidation and [that] proceedings for the 2020 Case Patents may move forward."[13]  Defendants oppose Plaintiffs' Motion for Reconsideration by arguing, <u>inter alia,</u> that pendency of petitions for post-grant review ("PGR") of the '161 and '938 Patents that they filed  challenging the validity of  those patents on June 30, 2020, and August 12, 2020, respectively, warranted a stay in the 2020 Case.[14]

---

[11]<u>See</u> Order Granting Defendant Hunting Titan's Motion to Transfer Venue for Potential Consolidation Under 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 42(a), Docket Entry No. 41 filed in Civil Action 4:20-cv-2123, p. 22.

[12]Order, Docket Entry No. 55.

[13]Plaintiffs' Motion for Reconsideration, Docket Entry No. 56, p. 4.

[14]Defendants' Opposition to Plaintiffs' Motion for Reconsideration of Order Consolidating Civil Action No. H-20-2123 and Civil Action No. H-17-3784 (DKT. 55) ("Defendants' Opposition to Plaintiffs' Motion for Reconsideration"), Docket Entry No. 57,
(continued...)

On January 19, 2021, and February 12, 2021, the PTAB declined to institute PGR of the '161 and '938 Patents, respectively.[15]

On March 15, 2021, Plaintiffs filed the pending Motion for Preliminary Injunction asking the court to "confirm [that] the stay of proceedings with respect to the '422 Patent does not extend to the '161 and '938 Patents, or [to] lift such stay with respect to the '161 and '938 Patents," and to "issue a preliminary injunction enjoining and restraining [Defendants], from continued sale of its H-1 perforating system or similar products alleged to infringe the '161 and '938 Patents pending final resolution of this action."[16]

On March 18, 2021, Defendants filed the pending Emergency Motion for Contempt and to Enforce Stay asking the court

> (1) to enforce the stay and confirm that Defendants need not respond to Plaintiffs' voluminous new arguments and expert statements in an admittedly stayed case; (2) to hold Plaintiffs in contempt of the Stay Order; and (3) to deny Plaintiffs' Motion at this preliminary stage.[17]

On April 15, 2021, the court entered an Order for Additional Information (Docket Entry No. 99) denying reconsideration of the

---

[14](...continued)
pp. 1 and 17 (citing PGR2020-00072 filed on June 30, 2020, and PGR2020-00080, filed on August 12, 2020, Exhibits H and I to Plaintiffs' Motion for Reconsideration, Docket Entry Nos. 56-8 and 56-9, respectively).

[15]Decision Denying Institution of Post-Grant Review for the '161 Patent, and Decision Denying Institution of Post-Grant Review for the '938 Patent, Exhibits 65 and 66 to the Declaration of Ana Friedman in Support of DynaEnergetics' Motion for Preliminary Injunction, Docket Entry Nos. 72-30 and 72-31, respectively.

[16]Plaintiffs' Motion for Preliminary Injunction, Docket Entry No. 67, p. 35.

[17]Defendants' Emergency Motion for Contempt and to Enforce Stay, Docket Entry No. 81, p. 7.

stay of the 2017 Case, carrying the motion for reconsideration of the stay of the 2020 Case, and ordering the parties to provide additional information to assist the court in ruling on the pending motions. On May 14, 2021, the parties filed responses to the court's Order for Additional Information.[18]

## II. **Plaintiffs' Motion for Reconsideration**

Plaintiffs ask the court to "reconsider its Order and deny Defendants' motion to consolidate the 2020 Case with the 2017 Case,"[19] and, alternatively, to "clarify its Order to provide that the 2020 Case is not stayed as a result of the consolidation and [that] proceedings for the 2020 Case may move forward."[20] In response to the court's Order for Additional Information, Plaintiffs argue that the 2020 Case should not be consolidated or stayed, and that an expedited trial schedule should be implemented.[21] Both parties have submitted proposals for expedited schedules.[22]

---

[18]Plaintiffs' Submission in Response to the Court's April 15, 202[1] Order for Additional Information ("Plaintiffs' Response"), Docket Entry No. 101; Defendants' Response to Order for Additional Information ("Defendants' Response"), Docket Entry No. 102.

[19]Plaintiffs' Motion for Reconsideration, Docket Entry No. 56, p. 4.

[20]Id.

[21]Plaintiffs' Response, Docket Entry No. 101, p. 2.

[22]See [Joint] Proposed Scheduling Order, Docket Entry No. 100.

7

Defendants oppose Plaintiff's Motion for Reconsideration arguing that there has been no change in the law or the facts, and that consolidation and stay are appropriate.[23]

## A.   Standard of Review

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." <u>St. Paul Mercury Insurance Company v. Fair Grounds Corp.</u>, 123 F.3d 336, 339 (5th Cir. 1997). The court's September 4, 2020, Order was interlocutory, not final. Courts reconsider interlocutory orders under Rule 54(b) which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of [a final judgment]."  "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be . . . flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" <u>Austin v. Kroger Texas, L.P.</u>, 864 F.3d 326, 337 (5th Cir. 2017) (per curiam) (internal citations omitted). "[T]he power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court.'" <u>Id.</u> (citations omitted).

_____

[23]Defendants' Opposition to Plaintiffs' Motion for Reconsideration, Docket Entry No. 57.  <u>See also</u> Defendants' Response, Docket Entry No. 102, pp. 3-17.

## B.   Analysis

Plaintiffs argue that

> [c]onsolidation is improper . . . [because] the 2020 Case
> and the 2017 Case involve different patents with
> different specifications, prosecution histories, and
> claim scope and thus there is no risk of inconsistent
> judgments if the matters are tried separately.  As stated
> in the earlier briefing, the '422 Patent is part of a
> different patent family than the 2020 Case Patents and
> claims a patentably distinct invention.   Contrary to
> statements made by Defendants in its motion to
> consolidate, the core issues of patent validity and claim
> construction, and thus infringement and damages are
> different in the 2017 Case than in the 2020 Case. . .[24]

Plaintiffs also argue that

> [t]he fact that the patents share some common language is
> not surprising given that they are both generally
> directed to perforation gun systems.   It does not,
> however, follow that validity or construction of claim
> terms in one patent will be dispositive on issues of
> claim construction in another patent. . . Similarly, the
> Federal Circuit appeal of the '422 Patent IPR proceeding
> will not be dispositive of any issues related to the 2020
> Case Patents.[25]

Defendants initially argued that consolidation is appropriate

because there is substantial overlap and consolidation would not

delay the 2020 Case.[26]  Asserting that "[t]he relevant question [for

---

[24]Plaintiffs' Motion for Reconsideration, Docket Entry No. 56,
p. 10.   See also Plaintiffs' Reply in Support of Its Motion for
Reconsideration of Order Consolidating Civil Action No. H-20-2123
and Civil Action No. H-17-3784 (DKT. 55) ("Plaintiff's Reply in
Support of Motion for Reconsideration"), Docket Entry No. 59, p. 5
("Defendants . . . fail to establish that the 2017 Case and the
2020 Case share common questions of law or fact such that
consolidation is proper where the cases involve different parties
and patents from different families with different inventors.").

[25]Plaintiffs' Motion for Reconsideration, Docket Entry No. 56,
p. 11.

[26]Defendants'    Opposition   to   Plaintiff's   Motion   for
(continued...)

consolidation] is . . . whether there is 'substantial overlap,'"[27] Defendants argued that they have "explained in great detail the substantial overlap of issues in these cases,"[28] and that "Judge Albright's Order transferring the 2020 Waco Case to the Southern District also discussed the substantial overlap between the cases.

"[29] Defendants argued that

> [a]s discussed in those documents, these cases:
> 1) include the same parties; 2) accuse the same products
> of infringement; 3) assert closely related patents that
> have three common inventors, are directed to the same
> system, have overlapping claim scope, have at least one
> identical figure, have many identical claim terms, and
> have the same specification (due to incorporation by
> reference).[30]

Asserting that similar factual and legal issues are in both cases,[31] Defendants now argue that consolidation reduces the burden on the parties, the witnesses, and the court.[32]

---

[26](...continued)
Reconsideration, Docket Entry No. 57, pp. 12-15.

[27]Id. at 12.

[28]Id. (citing Defendants' Opposed Motion to Transfer Venue and Consolidate, Docket Entry No. 39, pp. 8-10, and 14, and Defendants' Reply on Opposed Motion to Transfer Venue and Consolidate, Docket Entry No. 41, pp. 2-5).

[29]Id. at 12-13 (citing Exhibit B, Order Granting Defendants' Motion to Transfer Venue, Docket Entry No. 41, filed in the Civil Action No. H-20-2123, Docket Entry No. 57-2, pp. 10-13).

[30]Id. at 13.

[31]Defendants' Response, Docket Entry No. 102, p. 6.

[32]Id. at 6-7.

1.   <u>Appropriateness of Consolidation</u>

(a)   Applicable Law

Federal Rule of Civil Procedure 42(a) permits a court to consolidate cases that "involve a common question of law or fact." Consolidation does not merge the cases into a single action or change the rights of the parties. Consolidation is a procedural device used to promote judicial efficiency and economy by avoiding unnecessary costs or delay, and "actions maintain their separate identity even if consolidated." <u>Frazier v. Garrison I.S.D.</u>, 980 F.2d 1514, 1532 (5th Cir. 1993) (citing <u>Johnson v. Manhattan Railway Co.</u>, 53 S. Ct. 721, 727-28 (1933)). The decision to consolidate actions under Rule 42(a) "is entirely within the discretion of the district court as it seeks to promote the administration of justice." <u>Gentry v. Smith</u>, 487 F.2d 571, 581 (5th Cir. 1973). Courts consider several factors in weighing whether to consolidate cases, including (1) whether the actions are pending in the same court; (2) whether the actions involve a common party; (3) whether there are common questions of law or fact; (4) whether consolidation poses risk of prejudice or confusion and, if so, whether that risk is outweighed by the risk of inconsistent adjudications of common factual or legal questions if the cases are tried separately; and (5) whether consolidation will conserve judicial resources by reducing the time and cost of trying the cases separately. <u>See Frazier</u>, 980 F.2d at 1532. <u>See also St. Bernard General Hospital, Inc. v. Hospital Service Association of</u>

New Orleans, Inc., 712 F.2d 978, 989 (5th Cir. 1983), cert. denied, 104 S. Ct. 2342 (1984) ("Consolidation is improper if it would prejudice the rights of the parties."). Defendants, as the parties seeking consolidation, bear the burden of showing that the 2017 and 2020 Cases should be consolidated. See Frazier, 980 F.2d at 1531.

      (b)  Application of the Law to the Parties' Arguments

The 2017 and 2020 Cases are both pending in the same court, both involve all but one of the same parties,[33] and both allege that the same device, i.e., that Defendants' H-1™ Perforating System, infringes patents related to Plaintiffs' DynaStage System. The 2017 Case also involves the H-2™ Perforating System. At issue is whether there are common issues of law or fact, whether consolidation poses risk of prejudice or confusion and if so, whether that risk outweighs risk of inconsistent adjudication of common issues of law or fact, and whether consolidation will advance the interest of judicial economy. For the reasons stated below, the court will vacate the consolidation order, and allow the 2020 Case to proceed towards trial.

---

    [33]Hunting Titan Energy Services, Inc., which is a defendant in the 2017 Case, is not currently named in the 2020 Case. See Defendants' Response, Docket Entry No. 102, p. 7.

**(1) Consolidation is Not Warranted by Common Issues of Law or Fact**

Asserting that the claims of the '161 Patent are generally directed to the stackable components of a modular perforation system,[34] and that the claims of the '938 Patent are directed to the electrical feed through connections between perforation guns as well as to a modular detonator,[35] while the claims of the '422 Patent are generally directed to a wireless "push-in" Plug and Go™ style detonator,[36] Plaintiffs argue that "the core issues of claim construction, patent validity, and infringement are different in the [two cases]."[37]

Acknowledging that "different patents are at issue in the 2017 Case and the 2020 Case,"[38] Defendants argue that "all of the patents-in-suit share common claim language that Defendants expect the parties will ask this court to construe and then apply both to validity challenges based on similar prior art or infringement considerations for the same accused device."[39] Asserting that "the

---

[34]Plaintiffs' Response, Docket Entry No. 101, p. 5.

[35]Id. at 5-6.

[36]Id. at 6.

[37]Id. at 7.

[38]Defendants' Response, Docket Entry No. 102, p. 7.

[39]Id. at 7-8.

significance of this factor weighs in favor of consolidation,"[40] Defendants argue that

> the same parties will have to not only undertake the same discovery that has not begun in either Case, but depose and be present for trial the same fact, expert, and third party witnesses relating to allegations of the same allegedly infringing products. If the cases are not consolidated, not only will the same fact witnesses including the inventors need to be deposed twice, but it is expected that the same experts will be enlisted for both the 2017 Case and the 2020 Case — most likely the experts whose opinions are part of the IPR record on appeal regarding the '422 patent at issue in the 2017 Case. . . If the consolidation does not occur, the number of expert reports generated and defended will be doubled and the number of technical tutorials will be doubled as they relate to the same accused devices.[41]

Defendants' arguments are not persuasive because the two cases involve different patents, different claims, and different aspects of the accused H-1 device, and because Defendants have failed to identify any claim elements of the '422 Patent at issue the 2017 Case that are the same as claim elements of the '161 and '938 Patents at issue in the 2020 Case. Defendants identify a number of similarities between the '422 Patent and the '938 Patent,[42] but fail to show that the similarities they identify will impact the legal or factual issues to be decided in the 2017 and 2020 Cases. For example, Defendants argue that Fig. 6 of the '422 Patent is

---

[40] Id. at 8.

[41] Id.

[42] Id. at 10-13.

identical to Fig. 18 of the '161 Patent,[43] but they fail to explain how or why this figure relates to any of the legal or factual questions at issue in either the 2017 or the 2020 Case. Defendants argue that "[a]ll of the patents-in-suit incorporate in their entirety Canadian patent applications,"[44] but fail to show that the patents-in-suit incorporate the same Canadian patent applications.[45] Although the ultimate questions at issue in both cases are claim construction, patent validity, and patent infringement, Defendants have not convincingly shown that either the facts or the law needed to decide these issues are substantially similar in both cases.

### (2) Consolidation Poses Risks of Confusion and Prejudice to Plaintiffs

Plaintiffs argue that consolidation poses risks of confusion and prejudice to them because the '422 Patent at issue in the 2017 Case is from a different patent family, addresses different inventive subject matter, and claims infringement of different aspects of Hunting Titan's H-1™ Perforating System than the '161

---

[43]Id. at 10.

[44]Id.

[45]See Order for Additional Information, Docket Entry No. 99, p. 18 n. 46 ("[T]he court's examination of the cited references reveals that while the '422 Patent at issue in the 2017 Case, incorporates by reference Canadian Patent 2,824,838, the '161 and '938 Patents at issue in the 2020 Case, claim priority to Canadian Patent, 2,821,506, i.e., a different Canadian patent than the one incorporated by reference into the '422 Patent at issue in the 2017 Case.").

and '938 Patents at issue in the 2020 Case.[46] Asserting that "[p]atent cases are already complicated for a lay jury,"[47] Plaintiffs argue that consolidation poses a risk of confusion because "in whatever form the claims emerge from the '422 IPR Appeal, they will no longer be subject to a printed publication based validity challenge,"[48] while the '161 and '938 Patents will be subject to such a challenge.[49]

Without disputing that the patents at issue in the two cases belong to different patent families, address different inventive subject matter, and claim infringement of different aspects of the allegedly infringing device, Defendants argue that "[t]here is . . . less risk of prejudice or confusion by trying this as one case, one time."[50] Defendants contend that they

> could be subjected to a finding of infringement in the 2020 Case while those same claim elements are confirmed to be unpatentable by the Federal Circuit in the pending appeal of the '422 patent from the 2017 Case shortly thereafter. This would not only cause confusion in the marketplace, but possibly subject Defendants to an injunction and expose all the parties in these cases to another appeal to the Federal Circuit to address the inconsistency.[51]

---

[46]Plaintiffs' Response, Docket Entry No. 101, p. 18.

[47]Id. at 4.

[48]Id. at 3.

[49]Id. at 4 and 18.

[50]Defendants' Response, Docket Entry No. 102, p. 8.

[51]Id. at 9.

Asserting that "fact, expert, and third party witnesses identified by the Parties in the 2017 Case will likely be needed by the parties in the 2020 Case,"[52] Defendants also argue that "[t]here is less risk of prejudice or confusion by subjecting these witnesses [to] one set of depositions and trial testimony."[53] Defendants' arguments are not persuasive because Defendants fail to identify any claim elements that are, in fact, the same in the patents at issue in the two cases. Nor have Defendants articulated any reasons why separate trials would pose a risk of confusing witnesses or causing inconsistent adjudications of common issues of law or fact.

Asserting that "Hunting Titan's participation in the pre-loaded gun market — which would not be possible but for its infringement of the '161 and '938 Patents — has taken market share and eroded the prices DynaEnergetics is able to charge for its DynaStage system,"[54] Plaintiffs argue that

> consolidating the proceedings with respect to these three patents has already significantly prejudiced [them] as it has resulted in no progress towards adjudication of [Defendants'] infringement of the '161 and '938 Patents despite that the Complaint was filed more than [18] months ago.[55]

---

[52]Id. at 10.

[53]Id.

[54]Plaintiffs' Response, Docket Entry No. 101, p. 3.

[55]Id. at 17.

Plaintiffs argue that they have been irreparably harmed by Defendants' ongoing infringement during the existing delay, and will be even further harmed going forward.[56] Defendants do not dispute that delay in adjudicating the claims at issue in the 2020 Case prejudices the Plaintiffs, and have neither argued nor shown that the prejudice to Plaintiffs caused by delay in adjudicating the 2020 Case is outweighed by risk of inconsistent adjudications of common factual or legal questions, or by increasing the time or costs of litigation if the cases are tried separately. Moreover, Defendants have not argued that vacating the consolidation order will prejudice them in any way.

> ### (3)  Trying the Cases Separately Poses No Risk of Inconsistent Adjudication of Common Questions

Asserting that there is not likely to be a significant risk of inconsistent adjudication of common law or fact issues in the two cases, Plaintiffs argue that there is no overlap between the eleven claim terms of the '422 Patent, which Defendants have identified for construction, and any of the claim terms of the '161 and '938

---

[56]Id.  See also Plaintiffs' Reply in Support of Motion for Reconsideration, Docket Entry No. 59, p. 5 ("Absent consolidation and a stay, the 2020 Case is ready to proceed through discovery and to trial while the 2017 Case is not, and may not be ready to proceed to trial for another 12-18 months while the Federal Circuit resolves the parties' respective appeals. Preventing [Plaintiffs] from moving forward on [their] claims for the 2020 Case Patents, which are not under administrative review and are ripe for adjudication, would result in substantial prejudice.").

Patents for which Defendants sought construction in the related administrative proceedings.[57] Defendants argue that they "could be subjected to a finding of infringement in the 2020 Case while those same claim elements are confirmed to be unpatentable by the Federal Circuit in the pending appeal of the '422 patent from the 2017 Case shortly thereafter."[58] But because the two cases do not involve the same patents or claims of infringement, and because Defendants have failed to identify any claim elements that may be subject to inconsistent adjudication in the two cases, Defendants have failed to persuade the court that trying the cases separately poses any risk of inconsistent adjudication of the primary issues of claim construction, invalidity, and infringement.

### (4)  Consolidation Will Not Significantly Reduce the Time and Cost of Trying the Cases

Plaintiffs argue that while there will likely be some overlap in discovery, consolidating the 2017 and the 2020 Cases will not significantly reduce the time, expense, or burden of discovery and trial, because

> [r]egardless of the outcome of the '422 Patent IPR proceedings, the '161 and '938 Patents will be litigated before this Court.  Thus, the parties inevitably will

---

[57]Plaintiffs' Response, Docket Entry No. 101, p. 8 (citing Exhibit A, Declaration of Ana Friedman, ¶ 4 and Appendix A-1, Docket Entry No. 101-1, and Disputed Patent Claim Terms of the '422 Patent, Docket Entry No. 31-1).

[58]Defendants' Response, Docket Entry No. 102, p. 9.

(1) conduct discovery regarding the technical aspects, sales, marketing and financials relating to Hunting Titan's H-1 Perforating System; (2) conduct Markman proceedings with respect to any disputed claim terms in the '161 and '938 Patents; (3) prepare expert reports regarding Hunting Titan's infringement of the '161 and '938 Patents as well as address any potential validity challenges Hunting Titan raises; and (4) prepare expert reports addressing the appropriate damages for Hunting Titan's infringement. . . . [M]any of these categories will have no or only minimal overlap with the '422 Patent given the significant substantive differences between the inventions claimed in the '161 and '938 Patents as compared to the '422 Patent. . . [W]hile a couple of these categories may overlap with proceedings necessary to decide infringement of the '422 Patent, these portions can simply be reused, resulting in minimal additional discovery being required to adjudicate any eventual proceedings on the '422 Patent. . .[59]

Defendants argue that

[i]f the cases are not consolidated, not only will the same fact witnesses including the inventors need to be deposed twice, but it is expected that the same experts will be enlisted for both the 2017 Case and the 2020 Case — most likely the experts whose opinions are part of the IPR record on appeal regarding the '422 patent at issue in the 2017 Case. . . If the consolidation does not occur, the number of expert reports generated and defended will be doubled and the number of technical tutorials will be doubled as they related to the same accused devices. Dividing the 2017 Case from the 2020 Case generates "two bites at the apple" for every fact, point of law, motion, briefing, and technical tutorial in support or challenge of the issues in the cases. Accordingly, the judicial economy of trying the case once instead of twice is beneficial especially in light of any guidance received from the Federal Circuit regarding the overlapping claims on appeal.[60]

---

[59]Plaintiffs' Response, Docket Entry No. 101, p. 4.

[60]Defendants' Response, Docket Entry No. 102, p. 8.

While consolidation offers the ability to reduce the time, expense, and burden on all parties and the court, the potential reductions at issue in this case do not outweigh the prejudice that consolidation will impose on both the Plaintiffs and the court in the form of delay. Defendants initially argued that the risk of prejudice consolidation posed to Plaintiffs was not a high risk because "[p]etitions for [PGR] of the patents-in-suit in the 2020 Case were filed . . . and [were] likely to have [PGRs] instituted."[61] But since Defendants' petitions for PGR of both the '161 and the '938 Patents have been denied by the USPTO,[62] the two cases are no longer in the same procedural posture. The 2020 Case is now ready to proceed to discovery and trial while, for the reasons stated in § II.B.2(b)(1) of the Order for Additional Information, Docket Entry No. 99 at pages 21-27, the 2017 Case remains stayed pending conclusion of the cross-appeals of the '422 Patent's IPR proceedings now pending before the Federal Circuit. Moreover, Plaintiffs argue, and the court agrees, that overlaps in discovery between the two cases "can simply be reused, resulting in minimal additional discovery being required to adjudicate any eventual proceedings on the '422 Patent."[63]

---

[61]Defendants' Opposition to Plaintiff's Motion for Reconsideration, Docket Entry No. 57, p. 15.

[62]See Plaintiff's Motion for Preliminary Injunction, Docket Entry No. 67, p. 8 (stating that "the PTAB [has] declin[ed] both post-grant review [] challenges of the '161 and '938 Patents").

[63]Plaintiffs' Response, Docket Entry No. 101, p. 4.

## (c) Conclusions

Because Defendants have failed to persuade the court that the 2017 and 2020 Cases involve substantially similar questions of law or fact, and because the court has concluded that consolidation poses risks of prejudice to the Plaintiffs that are not outweighed either by the risk of inconsistent adjudications of common issues of law or fact or by interests of judicial efficiency and economy, the court is not persuaded that the 2017 Case and the 2020 Case should remain consolidated. Accordingly, Plaintiff's Motion for Reconsideration of the court's order of consolidation will be granted, and that order will be vacated.

## 2. Appropriateness of Stay

Plaintiffs argue that "the 2020 Case can and should proceed towards trial while the 2017 Case remains stayed pending the Federal Circuit appeal,"[64] and that "[s]taying the 2020 Case pending an appeal which will not resolve issues of fact relevant to the 2020 Case Patents would unfairly delay proceedings in [that] Case."[65] Defendants argue that

---

[64]Plaintiffs' Motion for Reconsideration, Docket Entry No. 56, p. 12. See also id. at 8-9 (arguing that consolidation is improper because "absent clarification from the Court, the practical effect of the Court's Order consolidating the 2020 Case with the 2017 Case is to impose the stay in place in the 2017 Case on the 2020 Case Patents").

[65]Plaintiffs' Motion for Reconsideration, Docket Entry No. 56,
(continued...)

[s]taying the 2020 Case to allow certainty from the appeal of the '422 patent in the 2017 Case allows both the claim construction and the patentability challenges to be processed once and consistently. It removes the risk and concern that the parties, the litigants, the expert witnesses, and ultimately the Court are pressed into inconsistent positions once the stay is lifted on the 2017 Case by whatever actions are taken in the 2020 Case before that time should the 2020 Case be allowed to proceed at this time.[66]

(a) Applicable Law

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 57 S. Ct. 163, 166 (1936). See also Murata Machinery USA v. Daifuku Co., Ltd., 830 F.3d 1357, 1361 (Fed. Cir. 2016) (same).

District courts typically analyze stays under a three-factor test: (i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set.

Murata, 830 F.3d at 1361. "A court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate." Id.

_____

[65](...continued)
p. 12. See also Plaintiffs' Response, Docket Entry No. 101, p. 3 ("[T]he 2020 Case is ready to move forward and the 2017 Case has been determined by this Court not to be. . . A stay will not simplify any issues with respect to the 2020 Case Patents.").

[66]Defendants' Response, Docket Entry No. 102, pp. 15-16.

23

(b)    Application of the Law to the Parties' Arguments

### (1)    Stay of the 2017 Case Remains Appropriate

For the reasons stated in § II.B.2(b)(1) of the Order for Additional Information, Docket Entry No. 99 at pages 21-27, the court has already concluded that the 2017 and 2019 Cases should remain stayed pending conclusion of the parties' cross-appeals to the Federal Circuit.

### (2)    Stay of the 2020 Case Is Not Appropriate

Asserting that "the Court's [September 4, 2020,] Order effectively grants relief that Defendants did not even request — a stay of the 2020 Case,"[67] Plaintiffs argue that a stay of the claims asserted for direct infringement of the '161 and '938 Patents is inappropriate because "neither party requested a stay in the 2020 Case and the patents-at-issue are not currently under administrative review."[68] Asserting that "the 2020 Case can and should proceed towards trial while the 2017 Case remains stayed pending the Federal Circuit appeal,"[69] Plaintiffs argue that "[s]taying the 2020 Case pending an appeal which will not resolve issues of fact relevant to the 2020 Case Patents would unfairly delay proceedings in the 2020 Case."[70]

---

[67]Plaintiffs' Motion for Reconsideration, Docket Entry No. 56, p. 3.

[68]Id. at 4.

[69]Id. at 12.

[70]Id.  See also Plaintiffs' Reply in Support of Its Motion for
(continued...)

Defendants initially argued in response to the Plaintiffs'
Motion for Reconsideration that a stay of the 2020 Case was
appropriate because the parties agreed to a stay, because their
petitions for PGRs of the '161 and '938 Patents were likely to be
instituted and at least some of the claims were likely to be found
unpatentable, and because no meaningful prejudice could come from
continuing the stay of the consolidated case for a few months
pending a decision on institution of the PGRs.[71] See Intellectual
Ventures II LLC v. BITCO General Insurance Corp., 2016 WL 4394485,
*2 (E.D. Tex. May 12, 2016) (recognizing that stay of patent
litigation "is particularly justified when the outcome of a PTO
proceeding is likely to assist the court in determining patent
validity or eliminate the need to try infringement issues")
(internal quotations and citation omitted)).

        (i)  No Agreement Exists to Stay the 2020 Case

        For the reasons stated in § II.B.2(b)(2)(i) of the Order for
Additional Information, Docket Entry No. 99 at pages 29-30, the
parties never agreed to stay the 2020 Case.

---

[70] (...continued)
Reconsideration, Docket Entry No. 59, p. 5, and Plaintiffs'
Response, Docket Entry No. 101, pp. 3-4, and 17 (arguing that stay
of the 2020 Case has and will prejudice DynaEnergetics).

        [71] Defendants' Opposition to Plaintiffs' Motion for
Reconsideration, Docket Entry No. 57, p. 17.

(ii) Circumstances Changed When the PTAB
Declined PGR of the '161 and '938 Patents

Defendants originally argued that stay of the 2020 Case was appropriate because PGR would likely be instituted for both the '161 and '938 Patents, and because there would be no prejudice from continuing the stay of the consolidated case pending a decision on institution of the PGRs.[72] When Defendants filed their response to Plaintiffs' Motion for Reconsideration, the PTAB had not acted on the Defendants' petitions for PGR of the '161 and '938 Patents. But circumstances changed in January and February of this year when the PTAB declined to institute PGR of the '161 and '938 Patents.[73] Thus, unlike the 2017 Case which the court has already determined should remain stayed, the 2020 Case is ready to move forward.

(iii) A Stay Will Prejudice Plaintiffs Without
Reducing the Burdens of Trial

Plaintiffs argue that the cross-appeals of the '422 Patent IPR proceeding to the Federal Circuit will not be dispositive of any issues related to the 2020 Case Patents,[74] and that

---

[72]Defendants' Opposition to Plaintiffs' Motion for Reconsideration, Docket Entry No. 57, p. 17.

[73]See Plaintiffs' Motion for Preliminary Injunction, Docket Entry No. 67, p. 8 (stating that "the PTAB [has] declin[ed] both post-grant review [] challenges of the '161 and '938 Patents"). See also Decision Denying Institution of Post-Grant Review for the '161 Patent, and Decision Denying Institution of Post-Grant Review for the '938 Patent, Exhibits 65 and 66 to the Declaration of Ana Friedman in Support of DynaEnergetics' Motion for Preliminary Injunction, Docket Entry Nos. 72-30 and 72-31, respectively.

[74]Plaintiffs' Motion for Reconsideration, Docket Entry No. 56, p. 11.

> [a] continued stay would not only deny [them their] day
> in Court to enforce their] duly issued '161 and '938
> Patents for an extended period for reasons unrelated to
> the validity of those patents, it would also increase the
> risk of evidentiary prejudice to [Plaintiffs] from lost
> or forgotten documentary and testimonial evidence.[75]

Defendants argue that staying the claims asserted against the '161 and '938 Patents in the 2020 Case is appropriate because at the end of the appeal process, "this Court will deal with a streamlined case by either having one fewer patents-in-suit or amended patent claims that substantially overlap the other remaining patents-in-suit."[76] Defendants also argue that "keeping the agreed-upon stay in place while the '422 Patent's validity is finally determined will avoid undue duplication and undue waste of judicial resources."[77] But for the reasons stated in § II.B.1, above, the court has concluded that the common issues of law and fact between the claims based on the '422 Patent and the '161 and '938 Patents are not similar enough to warrant consolidation, that consolidation poses risk of confusion and prejudice to the Plaintiffs, and that the risk of confusion and prejudice that consolidation poses to the Plaintiffs is not outweighed by the risks either of inconsistent adjudication of common questions of law or fact or of increased time and costs posed by separate trials. Accordingly, stay of the 2020 Case is not appropriate.

---

[75]Plaintiffs' Response to Defendants' Emergency Motion for Contempt and to Enforce Stay, Docket Entry No. 86, p. 15.

[76]Defendants' Reply to Plaintiffs' Response to Defendants' Emergency Motion for Contempt and to Enforce Stay, Docket Entry No. 91, p. 6.

[77]Id.

### III. **Plaintiffs' Motion for Preliminary Injunction**

Plaintiffs seek a preliminary injunction enjoining and restraining Defendants from continuing to sell its H-1™ Perforating Gun system alleged to infringe the '161 and '938 Patents pending final resolution of this action. As explained at the end of § II.B.2(b)(2)(iii) of the Order for Additional Information, Docket Entry No. 99 at pages 39-40, the court has found from experience that litigation of preliminary injunctions often causes undue duplication and waste of time and resources. The court informed that parties that its normal procedure is to consolidate preliminary injunction proceedings under Rule 65(a) with the trial on the merits, and required the parties to submit a proposed, accelerated discovery schedule for the 2020 Case for the court's use should the court decide to discontinue the stay, and for Judge Hank's use should the court decide to dissolve the consolidation. The parties have responded by submitting slightly different proposed scheduling orders, Docket Entry No. 100. The parties have also indicated a preference for this court to retain both cases even if the consolidation is dissolved.[78]

Both parties have submitted proposed expedited scheduling orders pursuant to the court's Order for Additional Information, Docket Entry No. 99 at page 39. The court prefers the Plaintiffs' proposed schedule because it provides a more accelerated schedule.

---

[78]See Plaintiffs' Response, Docket Entry No. 101, p. 19, and Defendants' Response, Docket Entry No. 102, p. 10.

Plaintiffs' counsel will be ordered to submit by July 22, 2021, a proposed patent case scheduling order with dates that are based on the date of this Memorandum Opinion and Order. The proposed scheduling order should include a date requiring mediation within thirty (30) days of the court's <u>Markman</u> ruling.

## IV. <u>Defendants' Emergency Motion for Contempt and to Enforce Stay</u>

Defendants' Emergency Motion for Contempt and to Enforce Stay asks the court

> (1) to enforce the stay and confirm that Defendants need not respond to Plaintiffs' voluminous new arguments and expert statements in an admittedly stayed case; (2) to hold Plaintiffs in contempt of the Stay Order; and (3) to deny Plaintiffs' Motion at this preliminary stage.[79]

For the reasons stated in § II, above, the court has concluded that Plaintiffs are entitled to relief from the order that effectively stayed the 2020 Case by consolidating it with the 2017 Case. The court's decision to grant Plaintiffs' request for substantive relief by vacating the order of consolidation and allowing the 2020 Case to proceed towards trial means that there is no basis either for holding Plaintiffs in contempt, or for enforcing the stay of the 2020 Case. Accordingly, Defendants' Emergency Motion for Contempt and to Enforce Stay will be denied.

---

[79]Defendants' Emergency Motion for Contempt and to Enforce Stay, Docket Entry No. 81, p. 7.

## V. <u>Conclusions and Order</u>

For the reasons stated in § II, above, Plaintiff's Motion for Reconsideration of Order Consolidating Civil Action No. H-20-2123 and Civil Action No. H-17-3784, Docket Entry No. 56, is **GRANTED,** and that portion of Order, Docket Entry No. 55, that consolidated Civil Action No. H-20-2123 with Civil Action No. H-17-3784 is **VACATED. Civil Action No. 20-2123 and Civil Action No. H-17-3784 will now proceed under their individual case numbers.** This court will retain jurisdiction over both cases.

For the reasons stated in § III, above, Plaintiffs' Motion for Preliminary Injunction, Docket Entry No. 67, is **DENIED.** Plaintiffs' counsel will submit by July 22, 2021, a proposed patent case scheduling order with dates that are based on the date of this Memorandum Opinion and Order. The proposed scheduling order should include a date requiring mediation within thirty (30) days of the court's <u>Markman</u> ruling.

For the reasons stated in § IV, above, Defendant's Emergency Motion for Contempt and to Enforce Stay, Docket Entry No. 81, is **DENIED.**

**SIGNED** at Houston, Texas, this 15th day of July, 2021.

_____

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE